UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 08-30452-DHW
                                                   Chapter 13
CAROL SUE WILLOUGHBY,

   Debtor.

## MEMORANDUM OPINION

Before the court is the motion for relief from stay filed by creditors Ann Clark and Jimmy Mitch Wilson. The proceeding, however, is better described as one to determine the respective ownership interests of the parties in a Florida condominium unit and/or the amount of the monetary liability between these parties.

An evidentiary hearing was held on August 18, 2008, to consider these issues. Representing the debtor at the hearing were her attorneys Paul D. Esco and David A. Bedgood. The movants, Clark and Wilson, were represented by their attorney, James E. Hill, III.

### Jurisdiction

This court's jurisdiction in this proceeding is derived from 28 U.S.C. § 1334 and from an order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, this is a core proceeding under 28 U.S.C. § 157(b)(2), and this court's jurisdiction is extended to the entry of a final order or judgment.

### Findings of Fact

Clark is a cousin of the debtor Carol Sue Willoughby, and over the years, Clark and Willoughby have jointly invested in a number of real estate

transactions. One of those transactions is the source of this dispute.

In September 2006, Willoughby, who owned a Panama City Beach, Florida condominium unit, agreed to sell a two-thirds interest in that property to Clark and Wilson. *See* Ex. M-2. The agreement provided that Clark and Wilson would each pay Willoughby $35,000 for their respective one-third interests. Of that amount, Clark and Wilson each made a $10,000 down payment and agreed to pay the remaining $25,000 within ninety days of the down payment. The agreement also provided that all of the furnishings would remain in the condo unit and that the three joint owners would equally share in expenses relating to the property including the monthly mortgage payment, association dues, utility bills and maintenance costs. Although the agreement was in writing, there was no formal closing of the transaction resulting in the execution of deeds of conveyance.

From that point forward, the parties began to perform under the agreement with each sharing one-third of the costs and expenses of the condo and with each enjoying their allotted time of possession of the condo. Clark and Wilson, however, did not fully pay the remaining purchase price within the time provided by the agreement. Instead, the parties orally modified the agreement to provide that the balance would be paid at some unspecified future date contingent upon Clark's sale of some other realty.

In July 2007, Clark and Wilson became interested in buying Willoughby's remaining interest in the condo. Willoughby agreed to sell her one-third interest to Clark and Wilson for $8,000. That agreement, however, was not reduced to writing.

On or about July 24, 2007, Clark and Wilson delivered to their attorney, Kenneth Battles, an $8,000 check made payable to Willoughby. *See* Ex. D-1. That check was for the purchase of Willoughby's remaining one-third interest and was to be held in escrow by Battles pending a formal closing.

What occurs next is somewhat confusing. Sometime after Clark and Wilson's delivery of the $8,000 check to their attorney, Willoughby went to Battles's office and executed two warranty deeds conveying differing interests in the condo to Clark and Wilson. Why two deeds were necessary is not clear,

2

but it seems that one deed evidenced the September 2006 transaction (conveying a one-third interest to Clark and a one-third interest to Wilson) while the second deed evidenced the first and second transactions combined (conveying a three-thirds interest to Clark and Wilson).[1] What is clear is that the two deeds and the $8,000 check were being held by attorney Battles pending the closing.

At the time of this July 2007 agreement, Clark and Wilson still owed $16,500 to Willoughby representing the unpaid portion of the purchase price under the September 2006 agreement. Therefore, at closing, Clark and Wilson were to pay Willoughby $8,000, the agreed price for her one-third interest, plus $16,500, the unpaid balance for the two-thirds interest. The evidence did not establish that a closing date was scheduled for the July 2007 agreement. Rather, the purpose for holding the deeds and $8,000 in escrow was to allow time for Clark and Wilson to raise the $16,500 for the unpaid portion of the September 2006 contract.

Meanwhile, Clark and Wilson took possession of the condominium unit in late July 2007. In early August 2007, they began making some minor repairs and performing cosmetic work on the unit. Throughout August, they paid the full mortgage installment payment ($1,459.96) as well as other expenses related to the condo totaling $2,166.21. *See* Ex. M-5.

Both sides blame the other for the collapse of the agreement. Willoughby contends that Clark and Wilson complained that they had agreed to pay too much for the condo originally and got cold feet. Their complaints led Willoughby to conclude that Clark and Wilson would not proceed to close on the agreement to buy her out. Conversely, Clark and Wilson contend that the deal fell apart once Willoughby discovered that the sale would subject her to capital gains tax liability. Both parties contend that but for the breach of the other, they were respectively prepared to fully perform under the contract.

Believing that Clark and Wilson would not perform under the agreement and suspicious of their attorney Battles, Willoughby returned to Battles's office

---

[1] What is confusing is why the first deed was necessary. The second deed conveyed all of Willoughby's interest in the condo. Therefore, it would appear that the first deed was superfluous.

3

where she was allowed to remove from escrow both the $8,000 check and one of the executed warranty deeds.[2] Willoughby endorsed and cashed the $8,000 check.

On August 31, 2007, on behalf of Clark and Wilson, an attorney in the Battles Law Firm, Julia T. Whisenant, sent Willoughby a debt collection letter. S*ee* Ex. D-3. The letter states that Willoughby, Clark and Wilson are each one-third owners of the condo unit. Whisenant reminds Willoughby that she is responsible for one-third of the costs and expenses for which she, Willoughby, was in default for the months of August and September. The letter provides, "You are still responsible for 1/3 of the Mortgage and bills of the unit as an equal 1/3 owner." *Id.* Finally, Whisenant notes that Clark and Wilson had deposited another $8,500 into the law firm's escrow account to finish paying off the debt owed to Willoughby from the September 2006 sale, but notes that those funds will be held in the attorney's trust account until a dispute concerning the original purchase price can be resolved.

On September 7, 2007, there was an exchange of e-mail messages between Whisenant and David Bedgood, Willoughby's attorney. *See* Ex M-4. There, the attorneys agreed that a management company should be employed to lease the condo unit in that their respective clients were not communicating.

In late September, Willoughby reentered the condo and changed the locks so as to prevent Clark and Wilson from entering the unit. It is uncontested that Willoughby removed a number of furnishings from the condo that under the September 2006 agreement were to have remained. Ex. M-1 is a list of the furnishings and appliances that, under the September 2006 contact, were to have remained in the condominium unit. Although Willoughby does not dispute that she has in her possession some of these furnishings, the evidence does not establish just what furnishings and appliances were removed by Willoughby after she locked Clark and Wilson out. Nor does the evidence establish the value of the personal property removed.

---

[2] Willoughby took the deed that transferred her entire interest to Clark and Wilson but left in the lawyer's office the deed that transferred only a two-thirds interest.

4

Finally, the court takes judicial notice that Coastal State Mortgage Corporation, the mortgagee on the condo, moved for relief from stay on August 14, 2008, alleging a default in payments from April 2008 forward. Following a hearing on the motion, this court granted the mortgagee relief from stay by order dated September 15, 2008.

**Conclusions of Law**

Although the agreements at issue here concern interests in the same realty, they are, nevertheless, two separate and distinct contracts between these same parties. Therefore, the outcome rests upon determining the parties' rights and liabilities under each agreement.[3]

The Second Contract (the July 2007 agreement)

The July 2007 contract provided for Willoughby to sell to Clark and Wilson her remaining one-third interest in the condo for the sum of $8,000. Assume for the moment that Willoughby believed that Clark and Wilson had backed out of the deal refusing to go forward to closing.[4] That would have left Willoughby, as the aggrieved party, with two options. First, Willoughby could have repudiated the agreement and brought suit under the contract. Had she pursued this course, her duty of counter performance would have been extinguished. Alternatively, Willoughby could have accepted less than perfect tender of performance yet preserved her right to sue for damages. Under the latter alternative, however, Willoughby's duty of counter performance would not

---

[3] Although this dispute involves oral real estate contracts and oral forbearance agreements, neither party has raised the affirmative defense of the statute of frauds and the court will not consider the statute of frauds in this decision.

[4] The record contains evidence that would support a finding that this assumption is correct. It is clear that Clark and Wilson were dissatisfied with the price that they agreed to pay for the property under the September 2006 agreement. Willoughby contends that Clark and Wilson would not close on the July 2007 contract unless she agreed to a reduction in the price under the September 2006 contract. This point is corroborated by the letter from Whisenant, Clark and Wilson's attorney, to Willoughby where the issue of the purchase price under the September 2006 contract was raised as still being in contention. *See* Ex. D-3.

5

have been extinguished. *Southern Energy Homes, Inc. v. Ard*, 772 So.2d 1131, 1134 (Ala. 2000) ("A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions.").

Willoughby chose the second option. She did not repudiate the contract. Rather, she accepted performance under the second contract by cashing Clark and Wilson's check for $8,000, which she knew represented the purchase price for a one-third interest. Yet, having accepted the benefits under the contract, Willoughby failed to render counter performance – a deed conveying a one-third interest to Clark and Wilson. By that failure, Willoughby breached the July 2007 contract. As a result, the damages due to Clark and Wilson under that agreement total $8,000.[5]

### The First Contract (the September 2006 agreement)

The September 2006 agreement provided that Willoughby convey two-thirds of her interest in the condo to Clark and Wilson (one-third interest to each) for a sum certain. The contract provided that Clark and Wilson were to pay the entire balance of the purchase price within 90 days of the initial down payment. To this day, Clark and Wilson have not paid the full purchase price. Willoughby, however, orally agreed to waive, at least temporarily, her right to payment within the 90-day period and has never made demand for immediate payment. Nevertheless, Clark and Wilson are liable to Willoughby for this amount under the September 2006 contract. That liability continues even though they now question whether they agreed to pay too much for the property originally. Willoughby is not obligated to convey by deed the two-thirds interest contemplated by this contract until the purchase price is paid. *See* Restatement (Second) of Contracts § 234(2) (1981) (providing that where performance of one party requires a period of time, "his performance is due at an earlier time than that of the other party").

Since the making of the September 2006 agreement, the parties have

---

[5] Willoughby's execution of a deed conveying a one-third interest (specific performance) on the date of this opinion would not make Clark and Wilson whole because the mortgage has now either been foreclosed or is in the process of being foreclosed. Therefore, money damages are Clark and Wilson's only remedy.

6

treated the agreement as though it was a completed contract. From the date of the agreement through July 2007, the parties complied with the terms of the contract, each paying one-third of the mortgage installments payments and other expenses. Therefore, the failure of the July 2007 contract to close due to breach had no effect upon the rights of the parties under the September 2006 agreement. It follows that Willoughby was not privileged to discontinue her obligation to pay one-third of the condo costs and expenses merely because the July 2007 agreement failed to close.

Clark and Wilson paid the full mortgage installment for the month of August but only two-thirds of the mortgage installment for the month of September. They incurred other condo related expenses in August 2007 totaling $2,166.21. Willoughby is liable to Clark and Wilson for one-third of the August mortgage payment and expenses for a total of $1,208.72.

Clark and Wilson also complain that Willoughby is liable to them for one-third of the value of certain furniture or appliances which she removed from the condo. Although Willoughby does not deny that she has in her possession some of the furniture and appliances from the condo, no evidence was presented as to what specific property was removed or the value of that property. Had proof been made, Clark and Wilson would be entitled to recover one-third of its value. Because of the lack of proof, however, to assess damages in favor of Clark and Wilson on this claim would violate the rule of law requiring damages to be proven to a reasonable certainty. *See* Restatement (Second) Contracts § 352 (1981) ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.").

## Conclusion

In summary, Willoughby is liable to Clark and Wilson for breach of the July 2007 contract in the amount of $8,000. Clark and Wilson are liable to Willoughby on the September 2006 contract in the amount of $16,500 (the unpaid purchase price) less $1,208.72 (Willoughby's unpaid one-third share of the August condo mortgage payments and expenses). Netting these amounts results in Clark and Wilson being liable to Willoughby in the amount of $7,291.28.

Done this 23rd day of September, 2008.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
　Paul D. Esco, Attorney for Debtor
　David A. Bedgood, Attorney for Debtor
　James E. Hill, III, Attorney for Creditor
　Curtis C. Reding, Trustee